case number 17-15393. Mr. Dodge. Thank you, Your Honor. This case involves at least two issues. First, the Georgia armed robbery statute does not fit within the ACCA's violent felony definition, even after Stokelyn, because the crime does not categorically involve the active employment of force required by a plea account. Second, the collateral attack waiver in Mr. Jackson's plea agreement does not bar Johnson relief today, because the sentence exceeds the statutory maximum. And once this court vacates the ACCA count, the district court will be able to unbundle the entire sentencing package and revisit the sentence on the bank robbery count as well. Unless the court prefers otherwise, I'll begin with the Georgia armed robbery statute. A violent felony under the ACCA includes two independent prongs. The active employment per lea cal, a violent force per Curtis Johnson and now Stokelyn. We concede that after Stokelyn, the Georgia armed robbery statute matches the latter prong, the violent force prong. There is no longer any daylight between the Georgia armed robbery statute's force element and Supreme Court precedent. If that were the only issue before the court, we would lose today. But that's not the only issue. The statute fails under the independent violent felony prong, the active employment of force under lea cal. The Georgia armed robbery statute simply does not match the active employment requirement. An offender in Georgia may accomplish an armed robbery without intending to use force against the victim. Georgia courts measure an armed robbery through the eyes of the victim. If the victim reasonably apprehends force, whether or not the offender himself intends force, an armed robbery has occurred. We know this both from the text of the Georgia robbery statute and also from Georgia case law interpreting that statute. The last line of the Georgia armed robbery statute speech volumes here. The Georgia legislature defines armed robbery and then at the end it sticks on an important addendum that the lesser included offense of armed robbery is robbery by intimidation. The Georgia legislature could have selected one of the other variants of robbery. It could have said lesser included offense is robbery by force, for example, but it didn't. It chose measure not through the eyes of the offender but through the eyes of the victim. That's true both in Georgia law and then that makes all the difference later when we compare it to federal law and lea cal. Do we know whether the court below used the elements or the residual clause in this sentencing? We do not. Is it on the record? No, it is not, Your Honor. We do not know at the time of sentencing in 2007 whether that district judge explicitly relied on the elements or the residual clause. So what do we do? Well, we decide it's on the residual. If it's under the elements, do you lose? If the district court below relied on the elements clause, we still win, as I said, because we don't fit under the elements clause because this crime does not involve the act of employment of force. If the district court below used exclusively the residual clause, of course we win after Johnson. And this question from you, Judge Seiler, brings to mind the government's brief in which it offers this defense. It's the new Beaman rule here in our circuit where we have the burden of proving that Mr. Jackson's ACCA sentence was based solely on the residual clause. This court is not in a position to pass judgment on the merits of that question here and now. Why not? The district court didn't do so. The district court, in fact, issued its decision in this 2255 motion here even before Beaman arrived. So the district court did not engage in any of the Beaman-related historical record inquiry that is required now in all 2255 motions. But didn't you just concede that we don't know whether the court used the elements clause or the residual clause? Why should we put the district court through the makework of coming to that same conclusion if you've already conceded it? Well, Judge Grant, I didn't mean to concede the merits of that Beaman request. I simply meant to say that the record below at the moment is silent, meaning the sentencing transcript and the PSR do not illuminate which clause the district court used back in 2007. But that's not the end of the story on the Beaman inquiry. Beaman also instructs courts to engage in an inspection of a historical record that can include the sentencing transcript and the PSR, but it includes much more. It includes case law contemporaneous with that original sentencing. What case law was on the books, not only in the Georgia appeals courts, but also here in the Eleventh Circuit, that would answer the question of which clause the district court must have used? Well, you have a special good case there that you're relying upon to show what's in the elements? I'm sorry, Your Honor, I don't quite understand your question. You're saying you could look at this circuit's law. Is there a really good case that you're relying upon to show, in fact, it was under the elements? Or are you just saying it should go back for the district court to make that decision? It should go back to the district court to make that decision, but once we return, I expect it will prevail, because the contemporaneous case law in 2007, at the time of Mr. Jackson's sentencing hearing, established that the elements clause could not have been the proper home for Georgia armed robbery. It must have only been the residual clause. The Georgia cases that I cite in my brief, Ramey, Joiner, and a Supreme Court opinion in Leocal, all arrived before 2007, before Mr. Jackson's sentencing. If the district court had engaged in the inquiry that we're doing here and now, it would have had to find then that the armed robbery statute did not fit in the elements clause. Other panels of this court have recently remanded to the district court to engage in the Beeman inquiry under facts just like we have here. Most recently, in U.S. v. Pickett, in a published decision about six months ago, the district court record below was silent on the question of what is the contemporaneous case law at play on this particular predicate offense. And the panel there did not feel equipped to make that merits decision under Beeman. Instead, passed it back to the district court to do that in the first instance. So if this court is inclined to consider the Beeman issue, I ask that it remand for that inquiry. One of the better arguments for that course of action on Beeman is that, in addition to the historical record, you also have the district judge's memory. And if, in some cases, maybe yours is not this case because of the length of time that has passed, but in some cases where the sentencing was recent, we've had district judges say, you know, my recollection is that at this time I was using the residual clause for all of these types of felonies. And that certainly is a factor to be considered in the Beeman analysis. Yes, it is, Your Honor. That is accurate. There are a number of things that the court must look at, the district court, beyond the sentencing transcript and the PSR. This district judge did not have an opportunity to do this here in this 2255 motion because the court issued the order well before Beeman. What is, if you had to pick one case from the Georgia courts that shows how nonviolently this offense can be committed, what would that case be? That would be Joyner v. State, 2006 Georgia Court of Appeals opinion. And this is the quintessential example of the least culpable conduct under the categorical approach that can match the Georgia armed robbery statute. In Joyner, the offender walked up to a cashier at a convenience store, stood in front of her, and demanded money. He did not show a weapon. He did not tell her he had a weapon. He did not gesture in any way. However, as he spoke to her, he had a hand in his pocket. The record doesn't even establish that he put his hand in his pocket or did anything in particular with that hand in his pocket. It could have been entirely coincidental as far as we can see from the Joyner opinion. What the Joyner court said is that this is still an armed robbery without a firearm, without a gesture or a threat because we look only at the victim's perception of the offender's actions. If I could quote for just a moment so the court can get a sense of what the Joyner court said. This was an armed robbery because the victim testified, quote, she believed Joyner had a gun because of the way he held his hand inside his jacket. She was frightened because she believed he might have a gun and gave him the drawer from the cash register. Under Leocal, the Supreme Court has told us that an offender must actively employ force. We look at his own intent in committing the act. Here, it's enough for armed robbery simply that the victim reasonably perceived force. What did the Georgia Court of Appeals in Joyner say about the statute's requirement of the quote, unquote, use of an offensive weapon? The court held that this set of facts fit within that standard. This was a use of weapon. Even though there was no weapon brandished or shown, the question that they were grappling with was, well, can it still be an armed robbery if I don't hold a firearm and point it at the victim? There are very gradations on that spectrum of how far we can get from an actual brandishment of a firearm. Here, the Joyner court said it's still use of a firearm even if there isn't one. As long as the victim... Under Joyner, it looks like the question was whether evidence, he was arguing that no evidence showed that he actually had a pistol. Didn't he have a toy gun in Joyner? Yes, Your Honor. After the fact, after the robbery was over, when they later arrested Mr. Joyner, he had a toy gun. That's right. But the victim herself, the evidence of that moment in time when the robbery happened was that there was no weapon shown or gestured or spoken of at all. There was simply a hand in a pocket. There are other Georgia cases where there's some sort of gesture, some sort of action by the defendant that's intended to tell the victim, I'm armed. For example, wrapping a gun or wrapping a hand in a towel or taking a hand in a pocket and actually pointing or moving it around. None of that happened in Joyner. Mr. Joyner didn't say, gesture, or hint at a firearm at all. He simply demanded money. But it was the victim's own perception that was enough. And under Leocal, that means that the crime does not match the ACCA violent felony definition and we ought to win. All right. Thank you very much. You've reserved your time for rebuttal, Mr. Dodge. Mr. Mendel. May it please the Court, Gabriel Mendel for the United States. As the panel has already discovered, this case is controlled by Beeman v. United States. And Beeman set forth two requirements that a 2255 petitioner needs to show in order to establish a claim under Johnson. The first requirement is the historical question. Was he sentenced under the residual clause solely at the time of his original sentencing in 2007? That's a question of historical fact. In respect, we disagree with my counterpart as to whether that's properly before this Court. This Court has the full record that it needs. It has the sentencing transcript. It has the PSR. And my counterpart just told you that the same case law he would rely on at the district court is what he's brought before you today. The thing we don't have is the district court's recollection of what it may have done. Your Honor, the sentencing – If a district judge tells you – and this may – as I said to Mr. Dodge, this may not be the right case for this paradigm because of the length of time that has passed. But if you have a case that is, you know, two to three years from sentencing and the district judge perfectly recollects that he or she was using the residual clause for these offenses exclusively at the time, that is certainly a relevant factor in the Beaman analysis, is it not? I don't disagree, Your Honor. In this case, the district court who sentenced Mr. Jackson was the Honorable Jack Camp, who resigned from the bench a number of years ago. So it's not the same judge. It's not the same judge in this case, Your Honor. And I don't disagree that there are cases where remand was appropriate and where it wasn't. As many cases where the Court has remanded, the Court has chosen not to. Your Honor, you were on a panel in the Harper case where the district court didn't decide the Beaman issue, and yet when it came up on appeal, you had the record before you, and you could tell from the record itself, of course this defendant is not going to be able to show with a silent record and the state of the law at the time that a – I'm sorry, I don't know which – I think it was an aggravated assault conviction in that case – that he was going to be able to meet the burden under Beaman. And the same is true here. We have the record. It's silent. There's no dispute. The sentencing judge is gone. So the only thing he's going to be able to argue is that somehow in 2007, 12 years ago before Curtis Jackson – or before Curtis Johnson, excuse me, that Georgia armed robbery as a matter of law couldn't qualify as an elements clause offense. There's no basis for that. There was no court of appeals from this court. There's no Supreme Court decision that would have told a district judge sitting in 2007 that he could only use the elements clause. He is never going to be able to meet that burden whether we do it today or whether we go back to the district court and waste that court's time. Finality and judicial resources are the driving force of AEDPA. We are on a successive 2255 application that was filed so long ago that Mr. Jackson has been out of prison for 18 months. And so I think it's all the more reason for us not to remand, for us to decide the issue. But even if the court is not comfortable – It's simply the use of resources, both ours but the district court, respect for the district court. And I think that's been part of why so many panels of this court have reached the issue when it's sufficient. A number of cases over – you know, Beamon took a while to come out. There's a lot of cases that came up not having that governing. But we briefed this issue below. We cited In re More, which was the predecessor to Beamon. Mr. Jackson had an opportunity to respond. We cited it in our brief in this appeal. And rather than respond and try to explain to this court in his reply brief why he could somehow meet that, he just said it's not before the panel. And I think there's good reason for that. He knows he's not going to be able to meet that burden. And it's just an effort to push off this question. Well, the district court had the opportunity to take up your offer to rule on In re More grounds and chose not to. So why don't we talk a little bit about the statute at issue here on the merits, if you don't mind. Absolutely, Your Honor. And that's another reason not to remand because even if we put aside the first requirement of Beamon and we move to the second requirement, Mr. Jackson fails there. And the second requirement is he has to show that even if he could meet this historical test that he does not have at this time three convictions that could continue to qualify his act of predicates under the surviving clauses. And he can't do that because all three of his convictions are for Georgia armed robbery. And without a doubt, Georgia armed robbery is the quintessential elements clause offense. The panel has had a vigorous discussion of Stoeckling today with our counterparts from Alabama. But Georgia armed robbery has this additional element. It's not just the force or intimidation. It's the use of an offensive weapon, which is defined as an instrument or a device that is likely to— The Georgia armed robbery statute does not require the use of force before you get to the use of an offensive weapon, right? If I take—put aside the weapon for a second. If I take the property from the vicinity of another, from the immediate presence of another, can I do it without force? No, Your Honor. Wait, wait. So if someone—a friend—if someone has a wallet on a bench right next to him and I come by and take it, have I, with the intent to commit theft, taken property of another from the person or immediate presence of another? Have I done that? Your Honor, the Georgia courts tell us that the phrase taking— I want you to go through—I'm going to let you tell me about the Georgia courts in a second, but I want to go through the statutory language itself first. I understand. In my hypothetical, have I, with the intent to commit theft, taken the property of another from the person or immediate presence of another by taking that wallet? No, Your Honor. What have I done? The word taking is defined by the Georgia courts as requiring actual force or intimidation. So whether in some colloquial sense you have taken the wallet, I might concede, but our interpretation of what that word means is irrelevant. The question is, in applying Georgia's armed robbery statute, what does the Georgia Supreme Court say a taking is? And it says that a taking requires actual force, which it defines as personal violence, or intimidation, which it defines as requiring you to put the victim in fear for their personal safety. And I'd like to stop for a moment and respond in particular to the argument that somehow intimidation isn't enough under LEACAL because it focuses solely on the victim's point of view. This court has already addressed that issue multiple times. There are a number of federal statutes, robbery statutes, carjacking statutes, that have an intimidation element. So if you look at, for example, at Horsting, U.S. v. Horsting, which was 678 Federal Appendix 947, what this court said is viewing it through the objective victim is fine. This doesn't raise a volitional act issue because you are defining the act through the effect it had on its victim. And by making it an objective question, you raise the standard sufficiently. So when you look at Joyner v. State, which my colleague relied on so heavily, what it says is that the use of an offensive weapon, if it's not actually shot at the person, if it's only constructive force, the test is whether the defendant's acts create a reasonable apprehension on the part of the victim that an offensive weapon is being used. This is part and parcel, this is the same intimidation standard that you see throughout federal law, throughout Georgia law, the common law. It's in Florida law, and as the court addressed in the previous case, Stokely doesn't seem to have a problem with that. So that's my substantive response. I think I'd also point out, I don't think Leakow was properly before this court. He was mentioned only in passing in the brief of Mr. Jackson. We did not have the opportunity to fully brief that issue. What is the proper standard after Voisin v. United States? We think it was waived. We think the effort to not rely on it is understandable because of the damage that the Stokeling decision from the Supreme Court has had on the defendant's case. But isn't that the same sort of argument that Mr. Dodge is making against you with regards to Beeman below, that you made a passing reference? You did make it, but you made a passing reference without a fully developed argument on what would become the Beeman argument? If that's the argument he's making, he's wrong. If you look at our 2255 response, we thoroughly discussed, I mean, the bulk of our argument is that he failed to make a showing that his sentence was under the residual clause. If you look at, I think what he tries to say is that because we put it under the guise of a timeliness standard that we therefore failed to raise it. But, of course, that was true in Beeman itself, as the court knows. In Beeman, the district court had viewed it under timeliness, and the government had, and the Beeman panel says, no, that's not quite right. It's not a timeliness issue. It's a burden of proof issue. It didn't say that the government had waived the issue or failed to raise it. We fully briefed it below. Mr. Jackson's entire 2255 reply brief is dedicated to exactly that question. What is his burden? He tried to argue that the in re chance alternative, because this is pre-Beeman, those are the two alternatives, the in re chance alternative, which would have allowed him to survive if he could show that it was possible, not necessary that the residual clause was the basis of his enhancement, that he would be able to move forward. So we fully briefed that below. I agree, Your Honor, that the district court didn't reach it, but everyone had that opportunity to fully brief it. The issue is the same as decided in Beeman. If we go back down, the briefs are going to look exactly the same. We certainly didn't waive that. And, of course, it's the principal argument in our brief in this court, and the fact that he fails to respond to it meaningfully, I think, is quite telling. What did Joyner say? You say that the Georgia courts have interpreted taking to require force. What does Joyner say about the use of force in that case? So Joyner is about, is on the intimidation side, obviously, and what it says is that, and what Joyner is about is it's not the force or intimidation aspect, it's the use of the offensive weapon, because as has been previously discussed, the question was, given that he didn't have a weapon and didn't take his hand out of his pocket, did he meet that element to take it up to armed robbery itself? I think clearly it was a robbery. I think the issue in Joyner was, was it an armed robbery, given he didn't take the gun out of his pocket? And what the panel there said, and this is true in Ramey v. State, it's not enough just to possess the weapon. And I'm going to read straight from the opinion. The test is whether the defendant acts, and this goes back to the volitional aspect, the defendant has to act, and whether the defendant's acts create a reasonable apprehension on the part of the victim that an offensive weapon is being used. The use of an offensive weapon is clearly the attempted use or threatened use of physical force. Mr. Jackson's counsel doesn't try to argue that use of an offensive weapon isn't enough. He's arguing that somehow the Georgia courts have allowed something less than use to pass through, but that's just not true. In Ramey v. State, it's not the fact that he had a knife. It's the fact that right before he robs this woman, he assaults her with the knife, sexually assaults her, ties her up, and then at some point puts the knife away before he takes her keys. And so what Ramey tried to argue is, well, at the moment I took her keys, that knife wasn't out, so it can't be armed robbery because the use of offensive weapon has to be contemporaneous. And the court says, no, did your acts create reasonable apprehension on her part, intimidation? And the answer was obviously yes. She testified he had just had a knife out. I was intimidated by the knife. The fact that he puts it in his pocket for a moment doesn't remove that from being the use of an offensive weapon. And the same is true in Joyner v. State. If he's got his hand in his pocket and the teller reasonably apprehends, according to the jury, who are undoubtedly properly instructed, that that caused her to reasonably apprehend he had an offensive weapon and was threatening her with it, then that was enough for that jury and it's enough for the court of appeals and it's enough for the elements clause. Whether it's a hand wrapped in a tie. Was that armed robbery in the Joyner case itself? I'm sorry, Your Honor. Was that the armed robbery? Yes, Your Honor. It was not a simple robbery. Yes, Your Honor. And I would just analogize to the federal statutes, which this court has already decided, carjacking, Hobbs Act robbery, bank robbery, there are a number of federal statutes that require, that have either an armed element or have a force or intimidation element, and they're exactly the same as what you find under Georgia law. And this court has had no problem. And, of course, it does. And when you look at Stoeckling and when you look at our precedent, that a Georgia armed robbery conviction is paradigmatically an elements clause offense. What's your argument in response to the fact that the offense of robbery by intimidation shall be a lesser included offense in the offense of armed robbery? How do you see that intimidation element playing? So I think there's a couple issues. One is to the extent the court is convinced that intimidation alone wouldn't satisfy the use of force requirement. We disagree. Obviously, we think it's the same as threatened use of force. But to the extent the court was persuaded by that, that might be a problem for a Georgia robbery by intimidation conviction. But this isn't a Georgia robbery by intimidation conviction. This is a Georgia armed robbery conviction, which separately requires the use of an offensive weapon. As we lay it on our brief, we believe that there are two elements that satisfy the elements clause, the offensive weapon and the force or intimidation. But the use of a weapon does not necessarily make an offense violent, right? As I understand your argument, you've separated the use of force element, which you say comes from the word take, and the use of an offensive weapon, which under Georgia law elevates a robbery to an armed robbery. Which of the two creates the violence necessary to render Georgia armed robbery an ACCA predicate? Both, either. Do you require both or either? Either. Either one is enough. Any offense which requires the use of an offensive weapon, as defined here, which is a weapon that is likely to cause death or serious bodily injury, any offense that requires a defendant intentionally to use an offensive weapon to accomplish it necessarily involves the use, attempted use, or threatened use of physical force sufficient to meet the standard under Curtis Johnson and the elements clause. I thank the panel for its time. All right. Thank you very much, Mr. Mandel. Mr. Dodge. On the Beeman question, there's simply no daylight here between this case and Mr. Pickett's case, the panel opinion a few months ago in which the court remanded for the district court to go through the historical record inquiry, which can be comprehensive. The government is asking the court Is there anything in the record that you would benefit from if it was remanded than if this court decided it? I mean, you don't have the same judge. That's right. We don't have the same judge going back on a remand. We will have an opportunity to make a fresh start on the contemporaneous case law in precedent, Your Honor. We didn't have that opportunity from the district court before. While it may be more efficient for the government to ask this court to pass judgment on that question, the district court ought to do that first. On the use of a weapon question in the Georgia armed robbery statute, intimidation simply doesn't match lea cal. Mr. Mendel suggests that we didn't raise this properly in our brief, but on pages 26 through 29 of our initial brief, I led with intimidation, I described intimidation in detail, the Georgia case law about intimidation, and even cited lea cal, of course, in that three or four pages of the brief. We certainly did raise that argument in that prom. Stokelyne does not carry the day here for the government. Stokelyne didn't talk at all about the active employment prom of the violent felony definition. Stokelyne didn't so much as cite or mention lea cal. Neither did the panel in Welch on the Alabama robbery statute. As Ms. Case said in the earlier argument this morning, Justice Gorsuch spoke for three pages in the Stokelyne transcript with the SGE's office about this question and seemed very troubled by the idea that intimidation could lead to a robbery conviction in Florida, but in the end that wasn't raised. The issue faded away, and it wasn't part of the Stokelyne calculus. These two different proms in the ACCA violent felony definition each stand on their own. Each is independent. The government's asking the court to conflate them or collapse them into one unitary element, but that's not proper even under Georgia armed robbery statute. But Mr. Mendel makes the point that putting aside the weapon, that the Georgia courts have interpreted the word take in the statute as requiring the use of force. What is your response to that? Well, I agree that the statute and case law says that the defendant must, quote, use a weapon. No doubt. But the battle here is being fought on the word use. Before you get to use, one of his arguments, Mr. Mendel's arguments, is that the Georgia courts have interpreted the word take as requiring force. And so my question is, what is your response to that assertion? Well, that's wrong. There's a specific crime in the Georgia code called theft by taking. It's an independent crime separate and apart from robbery. A robbery is simply a theft by taking with something else in addition to that, some use of a weapon, for example. So they are distinct from each other. The taking alone is not nearly enough. And use of a weapon is also not enough. The defendant must commit some act intentionally. But that act may not need be the intentional employment of force, right? So Joyner is a good example. The defendant clearly intended to put his hand in his pocket before he walked in that store. He intended to do that. Once that happened, all bets are off. It doesn't matter whether he intended that to be a threat, whether he intended that hand to overwhelm the victim's resistance. It's irrelevant. We simply shift over and look at the victim's perception. If she reasonably perceived that act as a threat, it's an armed robbery. All right. Thank you. Thank you very much. Thank you both. Do you want to take a break at some point? Why would you? I'm OK. OK. Do you want to take a break at some point? Whatever works for you. Yeah. Thank you.